```
                                    FILED
                          CLERK, U.S. DISTRICT COURT

                               July 28, 2015

                       CENTRAL DISTRICT OF CALIFORNIA
                       BY:          PMC          DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW DUBERRY, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> J. CREW GROUP, INC., an unknown business entity; and DOES 1 through 100, inclusive, <br> Defendants. | CASE NO. 2:14-cv-08810-SVW-MRW ORDER DENYING PLAINTIFF'S MOTION TO REMAND [11], GRANTING DEFENDANT'S MOTION TO DISMISS [9], AND DISMISSING THE COMPLAINT WITHOUT PREJUDICE |

## I.   INTRODUCTION

On, October 14, 2014, plaintiff Andrew Duberry ("Duberry") filed this wage and hour putative class action against defendant J. Crew Group, Inc. ("J. Crew") in California state court. (Dkt. 1.) Duberry asserts claims under California law for: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) final wages not timely paid; (6) waiting time penalties for wages not timely paid during employment; (7) non-compliant wage statements; (8) failure to keep accurate business records; and (9) violation of California's Unfair Competition Law ("UCL"), Cal, Bus. & Prof. Code. § 17200 *et seq*. Duberry brings this case on behalf of himself and "[a]ll current and former hourly-paid or non-exempt individuals employed . . . within the State of California at a 'J.Crew' or 'J .Crew Factory' store at any time during the period from four years preceding the filing of this

1   Complaint to final judgment." (Compl. ¶ 13.)

2        On November 13, 2014, J. Crew removed the case to this Court, asserting jurisdiction

3   under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) On November 25, 2014, Duberry filed

4   a motion to remand the case. (Dkt. 11.) After this date, but before Duberry's motion was heard,

5   two cases were decided that arguably alter the legal standard applicable to a motion to remand a

6   CAFA case: *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014), and *Ibarra v.*

7   *Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). Before these cases, proving

8   the amount in controversy was largely an exercise in mathematical gymnastics whereby

9   defendants attempted to transmute generic words used in the complaint into actual rates of

10   violation. *Ibarra* and *Dart Cherokee* at least raise the specter of a sea change. In light of these

11   landmark decisions, the Court granted both parties leave to file additional evidence.[1] (Dkt. 22.)

12        The Court now addresses Plaintiff's motion to remand upon this supplemented record.

13   For the reasons discussed below, the Court DENIES Plaintiff's motion to remand. The Court

14   also GRANTS J. Crew's motion to dismiss.

## II.    STATEMENT OF FACTS

16        Plaintiff asserts that J. Crew employed him "as an hourly-paid, non-exempt employee at a

17   'J. Crew' and/or 'J. Crew Factory' store" from December 2006 to roughly September 2012.

18   (Compl. ¶ 18.) He asserts that J. Crew engaged in a "uniform policy and systematic scheme of

19   wage abuse against their hourly-paid or non-exempt employees[.]" (Compl. ¶ 25.) According to

20   Duberry, "[t]his scheme involved, *inter alia*, failing to pay [him and the putative class members]

21   for all hours worked, missed meal periods and rest breaks in violation of California law." (*Id.*)

22   J. Crew also purportedly failed to provide Duberry and the putative class members with complete

23   and accurate wage statements because, *inter alia*, J. Crew's statements failed to include the total

24   number of hours that they worked. (Compl. ¶ 33.)

25        Duberry further alleges that "[a]t all material times set forth herein[,]" J. Crew engaged in

26   a host of purportedly unlawful behaviors, including: failing to pay overtime wages for all hours

---

28   [1] The Court also stayed Defendant's motion to dismiss the complaint pending resolution of the motion to remand. (Dkt. 22.)

worked, failing to provide the requisite uninterrupted meal and rest periods, failing to pay at least minimum wages for all "off the clock" hours worked, failing to pay all wages owed upon discharge or resignation, failing to pay all wages within a permissible time, failing to provide complete or accurate wage statements, failing to keep complete or accurate payroll records, and failing to properly compensate Plaintiff and the other class members.  (Compl. ¶¶ 35–43.)

## III.    MOTION TO REMAND

### A.    LEGAL STANDARD

CAFA gives federal district courts original jurisdiction over class actions involving at least 100 class members, minimal diversity, and at least $5 million in controversy.  28 U.S.C. § 1332(d).  In a notice of removal, a defendant need only plausibly allege that these prerequisites are met.  *Dart Cherokee*, 135 S. Ct. at 553.  Once confronted with a motion to remand, however, the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Id.* at 553-54; *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).  There is no presumption against removal under CAFA.  *Dart Cherokee*, 135 S. Ct. at 554.

Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply "real evidence" grounding its calculations of the amount in controversy.[2]  *Ibarra*, 775 F.3d at 1199.  Therefore, a defendant cannot assume a 100% violation rate based on the plaintiff's general allegation of a "pattern and practice" and "institutionalized unwritten policy that mandates these unlawful practices."  *Id.* at 1198-99 & n.3.  In contrast, a defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class.  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015).

Notwithstanding these goal posts, significant questions remain unanswered by the appellate courts.  For example, although both parties may submit summary-judgment-style evidence, it is unclear whether a plaintiff must submit affirmative evidence to prevail on a

---

[2]  This is true even where the plaintiff in a putative class action stipulates that it will seek less than $5 million dollars on the class's behalf.  As the Supreme Court noted, the plaintiff cannot bind the absent class members before class certification.  *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013).  Thus, a court is not bound to accept a named plaintiff's pre-certification stipulation that damages will not exceed $5 million.  *Id.*

1    motion to remand.  *Ibarra*, 775 F.3d at 1199-1200.  It is also unclear what kind of evidence

2    allows a defendant to carry its burden—all that is clear is that such evidence must be sufficient to

3    prove the amount in controversy by a preponderance.  *Id.* at 1197.

4           *Dart Cherokee* and *Ibarra* put all involved on the horns of a dilemma: the questions they

5    raise implicate fundamental tensions and evade easy answers.  *See, e.g.*, *Mejia v. DHL Express*

6    *(USA), Inc.*, No. CV 15-890-GHK (Jcx), 2015 WL 2452755, at *1-2 (C.D. Cal. May 21, 2015).

7    On the one hand, these cases require a defendant to do more than pull an assumed rate of

8    violation from the ether of generalized allegations of illegal behavior.  *See Ibarra*, 775 F.3d at

9    1199.  On the other hand, defendants should not be required to fall on their swords to establish

10   the propriety of removal jurisdiction.  *Unutoa v. Interstate Hotels and Resorts, Inc.*, No. 2:14-cv-

11   9809-SVW-PJW, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015).  Striking this Goldilocks

12   balance is a befuddling task; in the absence of guidance, district courts have struggled to get the

13   temperature between *Ibarra* and *LaCrosse* just right.

14          The cases are not perfectly consistent, but courts have generally found the amount in

15   controversy satisfied under two circumstances.  First, courts are satisfied when defendants

16   essentially confess by submitting calculations derived from actual evidence of potential

17   violations[3] observed in a sample of data, which the defendant then extrapolates to the putative

18   class.  *See Varsam v. Lab. Corp. of Am.*, No. 14CV2719 BTM JMA, 2015 WL 4199287, at *2–3

19   (S.D. Cal. July 13, 2015) (accepting the defendant's 25% meal break violation rate based on the

20   number of violations observed in the eligible shifts worked by putative class members).  And

21   second, courts have generally found the amount in controversy satisfied where a defendant

22   assumes a 100% violation rate based on allegations of a "uniform" illegal practice (or other

23   similar language) and where the plaintiff offers no evidence rebutting this violation rate.

24   *Unutoa*, 2015 WL 898512, at *2–3; *see also Ibarra*, 775, F.3d at 1199 (suggesting that an

25

26   _____

     [3]  This evidence might still be subject to challenge—for example, a defendant offered evidence of
27   the number of eligible shifts in which a meal period was not recorded but did not make any
     representation regarding whether this failure was because the employee voluntarily skipped the
28   meal period (in which case the defendant would not be liable).  *See Varsam v. Lab. Corp. of Am.*,
     No. 14CV2719 BTM JMA, 2015 WL 4199287, at *2–3 (S.D. Cal. July 13, 2015); *see also* Cal.
     Labor Code § 512(a) (permitting a meal period to be waived by mutual consent).

1    allegation that the defendant "universally, on each and every shift" would be sufficient to ground

2    an assumed 100% violation rate).  Although these cases may not set the baseline for what is

3    necessary, they demonstrate what is sufficient to satisfy the amount in controversy.

4         In contrast, *Ibarra* and similar cases have found that a generalized allegation of an illegal

5    "pattern and practice" or of violations occurring on "multiple occasions" are insufficient to

6    support an assumed 100% rate of violation.  The Court agrees with these cases that, following

7    *Ibarra*, a defendant cannot rely on such generalized allegations to support an assumed 100% rate

8    of violation.

9         What remains unclear is how to resolve cases in the middle: For example, cases involving

10   generalized allegations of an illegal "pattern and practice" used to support an assumed violation

11   rate less than 100% or cases involving competing evidence offered by both parties of different

12   types and degrees of persuasiveness.  The cases venturing into this murky area are not all of one

13   mind.  *Compare Johnson v. Sunrise Sr. Living Mgmt., Inc.*, No. CV 15-02297 BRO VBKX, 2015

14   WL 3830291, at *6 (C.D. Cal. June 18, 2015) (rejecting amount in controversy calculations, in

15   part, because the defendant failed to submit evidence essentially confessing liability), *with*

16   *Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB RBB, 2015 WL 4064642, at *3–5 (S.D.

17   Cal. July 2, 2015) (quoting *Oda v. Gucci Am.*, Nos. 2:14–cv–7468–SVW (JPRx),

18   2:14–cv–07469–SVW (JPRx), at *5 (C.D.Cal. Jan.7, 2015)) (accepting reasonable assumptions

19   based on the complaint and generalized employment data and stating that a defendant "is not

20   required to comb through its records to identify and calculate the exact frequency of violations"),

21   *and Mejia*, 2015 WL 2452755, at *3–6 (C.D. Cal. May 21, 2015) (accepting reasonable

22   assumptions based on the complaint and generalized employment data).  The life of this law will

23   be experience, not logic—in the meantime, these in-between cases will turn on context and

24   fact-specific considerations.  Bearing this in mind, the Court dives head-first into the meandering

25   cross-currents presented by the present record.

26       **B.    APPLICATION**

27        Plaintiff moves to remand the case because J. Crew failed to carry its burden of proving

28   the amount in controversy.

5

1           1.       Objections to LaStella's Declaration and Adverse Inference Request

2           Alongside its notice of removal, J. Crew submits the declaration of Diana LaStella

3 ("LaStella")—J. Crew's Vice President, Human Resources - Stores.  (LaStell Decl. ¶ 2.)  In her

4 declaration, LaStella provides general statistics gleamed from J. Crew's records, such as the

5 number of putative class members, the putative class members' weighted average hourly wage,

6 the number of putative class members terminated during the relevant time period, and other

7 similar data. *See, e.g.*, (LaStella Decl. ¶¶ 4–6.)  With its Opposition to the current motion, J.

8 Crew offers LaStella's supplemental declaration, in which she remedies some ambiguities in her

9 prior declaration and offers data based on records previously omitted from J. Crew's

10 calculations.[4]  (LaStella Supp. Decl. ¶¶ 5–13.)

11           Duberry challenges the foundation of LaStella's declarations based on her deposition

12 testimony.  In deposition, LaStella demonstrated a general familiarity with the kind of data that

13 was accessed from J. Crew's record keeping system to prepare the reports from which her

14 declaration was generated, as well as how that information would have been accessed. (Aiwazian

15 Decl., Ex. F. ("LaStella Dep."), at 25:7–13; 34:15–35:15; 45:4–46:2.)  She also demonstrated

16 that she knows how a weighted average pay rate is calculated.  (*Id.* at 46:9–47:2.)  LaStella

17 further testified that she had seen "a lot of different reporting, making sure that the reporting that

18 [they] were running was the correct stuff to be running."  (*Id.* at 37:13–23.)  She also said she is

19 sure that her declaration is accurate because she "trust[s] the people that work for [her] that are

20 the experts on it [the declaration] and the people that are working with [J. Crew]."  (*Id.* at

21 32:23–1.)

22           In her deposition, LaStella admitted that she did not personally run the employee records

23 reports on which the statistics in her declaration were based.  ( *Id.* at 23:2–8.)  Instead, she relied

24 on teams of people supervised by either Kevin Roddy ("Roddy")—the senior director of store

25 operations—or Jill Gold ("Gold")—the senior vice president of compensation and benefits.  (*Id.*

---

27 [4]  The data was previously omitted because it pertained to a time period when J. Crew was
28 transitioning between record-keeping systems and J. Crew feared it might be duplicative of other
data.  However, LaStella asserts that since the case was removed she has confirmed that none of
these records are duplicative.  (LaStella Supp. Decl. ¶ 4.)

at 23:9–24:9.)  LaStella said she knew that Roddy and Gold obtained the data for the declaration by working with their teams and going through the SAP, StaffWorks, and Dayforce systems. (*Id.* at 38:21—25.)  Nevertheless, she admitted that she did not know which employees actually ran the report.  (*Id.* at 23:22–25.)  Similarly, she stated that she did not know the "methodology" by which those employees would have run the reports because she does not personally run reports.

 (*Id.* at 45:12–46:5.)

LaStella also admitted that although she asserts in her declaration that she has "reviewed human resources records for 4,708 employees," (LaStella Decl. ¶ 4), she has not personally reviewed all of the human resources records for the 4,708 employees.  (LaStella Dep. 40:6–15.) She further testified that she had not reviewed each report personally, but that she has "people that are experts at it that provide [her] with the information and take [her] through it."  (*Id.* at 24:23–25:1.)  In other words, she testified that the data pulled from J. Crew's record keeping systems was "reviewed with [her]."  (*Id.* at 33:18–20.)

While Duberry's challenges raise non-negligible issues regarding LaStella's credibility, they do not show that her declaration is inadmissible.  Under Federal Rule of Evidence 1006, the proponent of evidence may use a summary or calculation to prove the content of voluminous records that cannot be conveniently examined in court, so long as the proponent makes the original records available for the other party to examine—which J. Crew apparently has done. Fed. R. Evid. 1006.  Moreover, in the context of the business records exception to the hearsay ban, courts have found a witness qualified to testify about data entered in business records so long as the witness was qualified to testify about the business practices and procedures for inputting the underlying data into the recording system.  *See, e.g., U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1044–45 (9th Cir. 2009).  Here, LaStella asserts that she is an authorized custodian of human resources records—including those containing the data underlying her declaration.  (LaStella Decl. ¶ 2.)  She further describes the records----personnel data, payroll records, and time records—and asserts that they are kept in the ordinary course of business.  (*Id.*)  As discussed above, in her deposition LaStella demonstrated familiarity with J.

1   Crew's record keeping systems, the type of data maintained in these records, and generally how

2   such information may be accessed.  J. Crew thus establishes sufficient foundation for LaStella's

3   testimony.

4         Duberry's argument that LaStella failed to compare the time keeping records to payroll

5   records is similarly unavailing.  While this failure calls into question LaStella's credibility and

6   the persuasiveness of her testimony, it does not render the declaration inadmissible.[5]

7   Additionally, there is nothing improper about LaStella's explanation that her assumed rates of

8   violation came from Plaintiff's complaint.  J. Crew readily acknowledges this approach in its

9   brief and offers LaStella's testimony to show just that—i.e. the dollar amount yielded when these

10  assumed rates of violation are applied to the generalized employment data to which LaStella

11  attests.

12        Also, the repeated breaks taken while a question was pending—after at least one of

13  which LaStella clarified her prior testimony—were somewhat understandable in light of the

14  confusing series of questions being asked.  While this undermines LaStella's credibility, it does

15  not render her testimony inadmissible.

16        Finally, the Court DECLINES Duberry's request for various adverse inferences.  Duberry

17  apparently ignores the fact that this Court issued a protective order limiting the scope of

18  LaStella's deposition to "topics she raises in her declaration—including the research she

19  conducted and the foundation for each of her factual assertions supporting removal jurisdiction."

20  (Dkt. 35: Order, at 5.)  Most of Defendant's counsel's instructions not to answer were in

21  response to questions that went beyond the scope of questioning allowed by the protective order,

22  and was thus proper.  Admittedly, Defendant's counsel told LaStella not to answer some

23  questions that were at least arguably within the allowable scope of deposition.  Nevertheless,

24  even assuming that these instructions were improper, none was given under circumstances

25  warranting an adverse inference.

26

27  [5] While Duberry makes much of LaStella's request to define "personal knowledge,"
    in context it is clear that this was a request to clarify the difference between
28  "knowledge"—about which counsel had just asked a question—and "personal
    knowledge."  (LaStella Dep. 26:5–10.)

## 2.    J. Crew's Employment Records

In its supplemental brief, J. Crew attempts to partially fall on its sword in order to prove the amount in controversy.  Without admitting liability, J. Crew offers calculations of the percentage of potential meal break violations observed in the subgroup of class members who terminated their employment within three years of the complaint's filing and who had been separated for at least thirty days.  J. Crew presents these calculations in argument and supports them with thousands of pages of raw data.  However, J. Crew fails to present any declaration from a qualified employee or other appropriate expert summarizing this data in a way that would allow the Court to meaningfully review the credibility, validity, accuracy, and persuasiveness of J. Crew's arguments.

While this is not a motion for summary judgment, the courts speak of considering summary-judgment style evidence.  *See e.g.*, *Ibarra*, 775 F.3d at 1197.  In keeping with this approach, the Court finds that the same rule applicable at summary judgment applies with equal force in this context: "The district court need not examine the entire file. . . where the evidence is not set forth in the opposing papers with adequate references so that it [can] conveniently be found."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  Because J. Crew failed to provide the Court with any convenient way of accessing the employment records to evaluate the degree to which they support J.Crew's argument, the Court DECLINES to consider J. Crew's argument regarding the actual rates of potential meal break violations observed.

## 3.    Duberry's Complaint and Deposition Testimony

In addition to the foregoing, J. Crew also argues that its amount in controversy calculations are supported by the complaint's allegations.  For example, J. Crew argues that Duberry's complaint would support 100% violation rates for his meal break, rest break, and wage statement claims.  Thus, because J. Crew assumes rates of violation under 100%, J. Crew argues that its assumed rates of violation are adequately supported.

As discussed above, Duberry alleges that J. Crew engaged in a "uniform policy and systematic scheme of wage abuse[,]" which "involved, *inter alia*, failing to pay [Duberry and the

putative class members] for all hours worked, missed meal periods and rest breaks[.]" (Compl. ¶ 25.) Duberry further alleges that J. Crew failed to provide the requisite uninterrupted meal periods, uninterrupted rest periods, and accurate wage statements "[a]t all material times set forth [in the complaint]." (Compl. ¶¶ 39, 43.) These allegations of a "uniform policy," "systematic scheme," and violations occurring at "all material times" are similar to allegations that other courts have found sufficient to ground an assumed 100% violation rate—even after *Ibarra*. *See*, *e.g.*, *Mejia*, 2015 WL 2452755, at *4 (finding allegations that the defendant "adopted and maintained uniform policies, practices and procedures" that caused labor law violations sufficient to support a 100% violation rate); *accord Unutoa*, 2015 WL 898512, at *2–3.

However, unlike in *Unutoa* and *Mejia*, here Duberry submits cognizable evidence refuting the complaint's broad allegations. In deposition, Duberry testified that he worked during his meal period "several times"—"[i]n a week or a month, it's sometimes two or three times[.]" (Aiwazian Decl., Ex. G ("Duberry Dep."), at 121:23–122:4.) Duberry only testified to being interrupted during a rest break once, and was apparently not asked to clarify the frequency with which he wasn't provided an uninterrupted rest break. (*Id.* at 171:18–172:8.) However, Duberry also testified that people that worked with him had told him that "they never received their lunch or their meals." (*Id.* at 189:1–5.) He further testified that former and current J. Crew employees have "mentioned they never got their lunch, their breaks or they've been cheated from that[.]" (*Id.* at 189:6–13.) Even if Duberry himself experienced a lower rate of violation, his admission that others experienced 100% violation rates plus the complaint's broad allegations are sufficient to ground a 100% assumed violation rate for his meal break and rest break claims. Nevertheless, given that J. Crew argues that its actual records show only a 70% violation rate for meal break penalties, the Court applies a 70% violation rate to the meal break penalty claim.

Applying a 100% violation rate to the rest break claim, this claim places $5,016,360.72 in

controversy.[6]  Applying a 70% violation rate to the meal break claim, the meal break claim places $1,964,504.09 in controversy.[7]  Thus, Duberry's meal break and rest break claims alone are sufficient to establish the amount in controversy.[8]  Moreover, Duberry asserts that J. Crew wrongfully issued inaccurate wage statements by failing to include, *inter alia*, all of the hours that Duberry and the putative class members worked.  (Compl. ¶ 33.)  Thus, based on the foregoing meal and rest break claims, J. Crew would be entitled to assume a 100% violation rate as to the inaccurate wage statement claim.  *See Mejia*, 2015 WL 245275, at *5.  Nevertheless, the Court need not reach this issue in order to conclude that J. Crew adequately proves the amount in controversy.

### 4.    Conclusion

For the aforementioned reasons, the Court FINDS that J. Crew adequately proves the amount in controversy exceeds $5 million.  The Court therefore DENIES Plaintiff's motion to remand.[9]

## IV.    MOTION TO DISMISS

Because the Court concludes that this action was properly removed, the Court now reaches J. Crew's previously stayed motion to dismiss the complaint.  J. Crew moves to dismiss Duberry's minimum wage and inaccurate wage statement claims for lack of standing and to dismiss his complaint in its entirety for failure to state a claim.

### A.    LEGAL STANDARD UNDER RULE 12(B)(1)

A motion to dismiss for lack of standing is properly analyzed under Federal Rule of Civil Procedure 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion to dismiss

---

[6]  This is obtained by multiplying the 424,396 days on which a putative class member worked over 3.5 hours by the average hourly rate of $11.82.  (LaStella Decl. ¶¶ 9–10.)  J. Crew's brief contained a computation error resulting in an asserted amount in controversy that was rough $1,300 greater than this amount.  Regardless, this error is immaterial.

[7]  This is obtained by multiplying 70% of the 237.431 days on which putative class members worked over 5 hours by the average hourly rate of $11.82.  (LaStella Decl. ¶¶ 9–10.)

[8]  This is true even without including the additional data disclosed in LaStella's supplemental declaration.

[9]  In light of the foregoing conclusion, the Court finds it unnecessary to reach any of the parties' arguments regarding the amount placed in controversy by Duberry's other claims.

1   under Rule 12(b)(1) challenges the Court's subject matter jurisdiction to hear the claims alleged.

2   Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may be asserted either as a facial challenge to

3   the complaint or a factual challenge.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

4   Cir. 2004).  In a facial challenge, the moving party asserts that the allegations contained in the

5   complaint are insufficient on their face to invoke federal jurisdiction.  *Id.*; *Warren v. Fox Family

6   Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  When reviewing a facial challenge, the

7   court is limited to the allegations in the complaint, the documents attached thereto, and judicially

8   noticeable facts.  *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3rd Cir. 2000).

9   The court must accept the factual allegations as true and construe them in the light most

10  favorable to the plaintiff.  *Id.*  Conversely, "in a factual attack, the challenger disputes the truth

11  of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for

12  Everyone*, 373 F.3d at 1039.  In resolving a factual attack on jurisdiction, the court may review

13  extrinsic evidence, and if the evidence is disputed, the Court may weigh the evidence and

14  determine the facts to satisfy itself as to its power to hear the case.  *See id.*; *Roberts v.

15  Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

16       Regardless of the type of motion asserted under Rule 12(b)(1), the plaintiff always bears

17  the burden of showing that federal jurisdiction is proper.  *See Kokkonen v. Guardian Life Ins.

18  Co. of America*, 511 U.S. 375, 376-78 (1994); *Valdez v. United States*, 837 F. Supp. 1065, 1067

19  (E.D. Cal. 1993), *aff'd* 56 F.3d. 1177 (9th Cir. 1995).  "In effect, the court presumes *lack* of

20  jurisdiction until plaintiff proves otherwise."  Schwarzer, Tashima & Wagstaffe, California

21  Practice Guide:  Federal Civil Procedure Before Trial § 9:77.10 (Rutter Group 2011) (citing,

22  *inter alia*, *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989))

23  (emphasis in original).  "The proponents of subject-matter jurisdiction bear the burden of

24  establishing its existence by a preponderance of the evidence."  *Remington Lodging &

25  Hospitality, LLC v. Ahearn*, 749 F. Supp. 2d 951, 955-956 (D. Alaska 2010) (citing *United States

26  ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999)).

27       **B.    LEGAL STANDARD UNDER RULE 12(B)(6)**

28       A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims

12

stated in the complaint.  Fed. R. Civ. Proc. 12(b)(6).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion."  *Odom v. Microsoft Corp*, 486 F.3d 541, 545 (9th Cir. 2007).  However, a Court need not accept legal conclusions as true.  *Iqbal*, 556 U.S. at 678.

If a court dismisses the complaint, it will freely grant leave to amend.  *DeSoto.*, 957 F.2d at 658.  In deciding whether to dismiss with prejudice, courts consider the following factors articulated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Id.* at 182; *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015)**.**

### C.     APPLICATION

J. Crew correctly argues that Duberry's complaint is little more than a bare recitation of the legal elements of his assorted labor law claims.  For example, Duberry fails to allege: (1) Duberry's own job title; (2) the particular store (or stores) at which Duberry was employed; (3) whether J. Crew's purported "uniform policy and systematic scheme of wage abuse" were written; (4) any other facts describing the circumstances and context of J. Crew's purported "uniform policy and system scheme of wage abuse."  While Duberry need not allege every detail of every violation experienced by the class, he must do more than provide a formulaic recitation of the elements of his causes of action.  *See Weigele v. FedEx Ground Package Sys., Inc.*, No. 06-CV-1330 JLS POR, 2010 WL 4723673, at *4–6 (S.D. Cal. Nov. 15, 2010).  Because Duberry fails to allege sufficient facts, the Court GRANTS J. Crew's motion to dismiss the complaint.

Additionally, the Court notes J. Crew's argument that Duberry's minimum wage statement and inaccurate wage statement claims are time barred. Based on the face of the complaint, these arguments appear to have merit. Thus, any amended complaint including these claims should address the statute of limitations issue. However, J. Crew's argument that there is no private right of action to enforce the minimum wage requirement under Cal. Labor Code § 1197.1 is inapt. *Cf. Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1252–56 (Cal. Ct. App. 2008) (discussing the availability of punitive damages under § 1197.1 and implicitly recognizing that a private right of action exists).

For the aforementioned reasons the Court DISMISSES WITHOUT PREJUDICE Duberry's complaint. Because the Court cannot say that amendment would be futile, Duberry is GRANTED LEAVE to file an amended complaint within thirty days of this Order's issuance.

**V.    ORDER**

1. For the aforementioned reasons, the Court DENIES Plaintiff's motion to remand the action.

2. For the aforementioned reasons, the Court GRANTS Defendant's motion to dismiss the action and DISMISSES WITHOUT PREJUDICE Duberry's complaint. Duberry is GRANTED LEAVE to file an amended complaint within thirty days of this Order's issuance.

**IT IS SO ORDERED.**

Dated: July 28, 2015

_____
STEPHEN V. WILSON
United States District Judge